Our next last case on the call of the doctor this morning is agenda number four case number one one zero seven seven seven people versus Victor Villa counsel for the appellate morning honors counsel Paul Glazer on behalf of mr. One of the seminal decisions of criminal law practice in the state is this court's decision in people versus Montgomery. One of the rules established by that case was that a defendant testifying as on behalf could not be impeached with a prior juvenile adjudication. The primary question here today is does Montgomery still apply or did the General Assembly intend to overwrite it or did it intend to give this courts rules of evidence for respect. We say Montgomery remains good law. Victor Villa appeals as convictions for the offenses of aggravated battery with a firearm and aggravated discharge of a firearm following a jury trial in Boone County. The charges arose out of a shooting that followed an incident in which my client was beaten by four other young men including the nephew of a man who was later the victim of the shooting. After turning himself in to the police sometime later Victor signed an inculpatory statement to the police. At the trial Victor took the stand to refute the statement and specifically that he did not know that the shooter was in fact going to shoot into the crowd. But his credibility was irreparably prejudiced when the state impeached him with the prior delinquency adjudication and when the state referred to that adjudication some four times during closing and final argument to the jury. Although the second district thought otherwise, the fourth district appellate court still finds that Montgomery is good law and prohibits the impeachment of a defendant by his prior juvenile adjudications. The court said in the Coleman case just last April, as we sit here today a juvenile adjudication of a defendant who testifies is normally not admissible. And the court reiterated that same rationale and same finding in the Bond case just this past November. There is a statute that undeniably has some connection to this issue, section 5-150 subsection 1C of the Juvenile Court Act. The legislature has directed that juvenile adjudications are admissible for impeachment against a defendant in a criminal case but only pursuant to the rules of evidence for criminal trials. That particular wording of that clause, the pursuant to clause, does not appear anywhere else in the Illinois compiled statute or if it does I was unable to find it. Which leads to the second question. Did that clause signal intention by a legislature to overturn Montgomery? We say no. The General Assembly was surely aware of the Montgomery decision. Everyone knows about Montgomery. The pursuant to clause must be interpreted as a sign of respect for the Montgomery decision because otherwise it would be to read that clause as meaning nothing, mere surplusage, which the state seems to agree is not to be Mr. Glazer, aren't you reading out, though, the statute, the clause, including the minor or defendant if he or she testifies? I mean, wouldn't your interpretation of the language, you know, vis-a-vis still including Montgomery, doesn't that read right out and make superfluous the specific inclusion of the phrase, including the minor or defendant if he or she testifies? No, Your Honor, because there are instances where a defendant might be subject to cross-examination with his prior adjudication. The statute, the state wants us to read the statute with a period after the word impeachment, but that's not how the statute goes. It goes pursuant to the rules of evidence. There may be instances such as, Your Honor has discussed in the Harris case where a defendant opens the door to not write denies having a prior, any prior criminal activity. There could be exceptions such as other crimes evidence situations where a defendant's prior adjudication may well be relevant to show other crimes, motive intent, opportunity, et cetera. Did the defendant here, as in Harris, open the door? Absolutely not, Your Honor. The door here was opened by the judge when he denied the pre-trial motion in limine. After denying that motion, no matter what my client testified, so my client took the stand and said, my name is Victor Villa. The state could have impeached him with his prior adjudication by means of the judge's pre-trial ruling. And that's the major distinction between this case and Harris. In Harris, the defendant said, I don't commit no crimes. And of course he did. And we don't want people to take the stand and lie. It's not right. My client, when he said, I've never been in this position before, I haven't been in prison before, that was, that was the truth. First of all, I hadn't been in prison because the prior adjudication was what he received probation for, so he was never in prison. Not being in a situation like that before, he was in fact, there's a unique situation here, that my client was in fact interviewed by the same detectives that interviewed him in this case, interviewed him in some other case some 20 months prior. Isn't the pertinent question, as enunciated in Harris, whether the defendant's testimony could have reasonably been construed as an attempt to mislead the jury? And that's where the unique situation comes in. When he says, I've never been in this position before, of being examined or interrogated by police, the state had evidence, which they rightly used, that he had been interviewed by these same detectives 20 months earlier. The defendant made the statement in the context of, I was in pressure, I was in this small room, I didn't really, I tried to deny it, the police wouldn't listen to me, I made up some facts in the hopes of making my statement sound believable. The context, the purpose of his testimony, of his denials was to show, hey, I'm not used to being questioned by the police. Well, the fact was he was, and the state was thoroughly entitled to impeach him with his experience 20 months earlier to having been interviewed by these same detectives. Nothing that my client said denied having committed a crime in the past. What about when he said, I've never been in prison or nothing like that? What about nothing like that? Nothing like that means I've never been in prison, I've never been in jail, never been in perhaps a youth home. The facts of this case, though, and the state grudgingly says my client was being hyper-technically true, which I don't know whether it would be truer or not, my client had been given probation for a burglary. He wasn't sentenced to the youth home, to my knowledge. If he was, still, the youth home was not at all like prison. Prison and jail are pretty much the same. When he said, never been in prison, the fact that he was adjudicated delinquent earlier for a burglary doesn't prove that he was in prison. It just shows that he has a prior and his reputation is bad. That's the whole purpose of impeaching someone by means of a prior conviction, is that they have a lousy reputation because they're a prior felon. And that's not what happened to my client here. Again, there are rules and there are exceptions to rules, and the Harris is the one exception to the rule. The other exception might be the Coleman case that I mentioned before from the 4th District, where the defense counsel believed there was a valid strategic reason and benefit to his client to presenting the evidence of the prior as part of the defense case. That's an exception. That's pursuant to the rules of evidence. When my client said, never been in a situation like this before, that could well be interpreted to mean I've never been a suspect in a shooting before. I've never been accused of shooting a guy or being involved in a shooting before. There's nothing untrue about that statement that would be proven by showing that he has a delinquency adjudication for burglary. For all we know on the record here, he was never involved in a shooting before. So it wasn't like that adjudication helped prove he was not telling the truth. Again, it was the pretrial motion, not anything my client said, that opened the door to this. The third question is whether the trial counsel was ineffective for not recognizing the law supporting the exclusion of juvenile adjudications. Counsel did file a motion to eliminate before trial, a pretty blanket boilerplate motion, and did renew the denial of the motion and the post-trial motion. So he preserved the error for appeal. But when asked point blank by the trial judge, do you know of any case law out there that says I can't use this, he specifically said, no. In fact, I believe the case law specifically says, and then he's interrupted by the judge, this is page 134 of the record, yeah, there's no case, that case law says you can use it. Well, as a matter of fact, he was wrong. As of the time of the trial in this case, which was some seven months before this court's decision in Harris, there was no published case law that said that juvenile adjudications could come in for impeachment. The defense counsel was simply wrong in conceding the point to the judge in the pre-trial motion. Judges are expected to rule on cases and to progress the cases through the court. They don't have time to go back to chambers and look up the law to see which party is arguing the correct law. It's incumbent on the lawyers to be able to go before the judge and say, Your Honor, here's a case or two or three that says to support my motion. And certainly Montgomery, again, everyone knows about Montgomery or should know about, or the defense attorney ought to know about Montgomery and could have said, Your Honor, Montgomery says, because it does say you can't allow juvenile adjudications in as impeachment. There should be and there are... Mr. Grazer, can we talk just momentarily about, you have an ineffective assistance of counsel claim? Yes, Your Honor. That's somewhat of a throwaway, isn't it? If you prevail on either of your other two arguments, if you prevail on those, I mean, he's going to get relief anyway. I mean, presumably counsel is ineffective in those situations. And if you don't prevail, there was nothing that, if we don't agree with your arguments, there's nothing that counsel could have done to stop the admission of the adjudication, right? So it's kind of a, pretty much a throwaway argument, isn't it? No, it's not, Your Honor. It's not a throwaway. If this court decides that the judge, that a judge can use the weighing factor of prejudice versus probative value to decide whether to admit a juvenile adjudication, my client here was denied effective assistance because had the judge known that there was Montgomery out there and there was this wealth of case evidence, the judge could have, there's a reasonable probability that the judge may have been persuaded not to allow it in from the weighing standpoint because the prejudice would have outweighed the probative value at that point. But my client was handcuffed by an attorney who didn't have all the ammunition in his gun to shoot on behalf of his client. He came in, well, I got a motion here. I don't have any support for it. Do what you want, Your Honor. That's not advocacy. That's not what we want from our lawyers in this. I thought we wanted to have a lawyer who came to court, prepared for the case, who files a motion backed by a case law, who's willing to make the argument necessary to convince the judge to rule for his client, and that's not what this attorney did here. Mr. Glassman, does the record reflect that the defense counsel might have even addressed the adjudication on direct? Did he do that in order to minimize the effect once it was passed? I'm not sure if he did. He did discuss it in his closing argument to the jury. He did before the jury. Right. But again, the defense counsel at that point, he knows the odds are, the cards are stacked against him, and he's got to ameliorate the damage as best he can. I don't think that opens the, that did not open the door. There are, there is and there should be and there are differences between juvenile adjudications and adult criminal convictions. That much was recognized by the version of federal rule of evidence 609 adopted by this court in Montgomery, that when a defendant is the witness, there should be no discretion as to the admission of juvenile adjudications. For what it's worth, the content of the current rule 609 is, in federal rules, is the same as is the Eleanor rules as well. Whether delinquency proceedings are intended to rehabilitate or to punish may be open to debate, but that's not the question here. In 1979, again in 2002, the American Bar Association recognized that crimes committed before a person turns 18 should not carry the collateral consequences normally attendant to criminal convictions. Impeachment by prior record relates to a person's reputation. In Montgomery, this court held certain prior violations, felonies, infamous crimes that relate to truth or veracity, those that happen within a 10-year period. Those, those prior convictions could be admitted because they relate to the witness's present reputation. But a juvenile hasn't had the same opportunity to develop the reputation that an adult has, as recognized by Montgomery some 40 years ago. The consequences of delinquency should not include impeachment. We therefore ask that Mr., this court find that Mr. Villa was denied a fair trial and that he get a new trial, remain in this case for a new trial.  Thank you, Your Honor. Counsel for the appellee. Good morning, Your Honors, and may it please the Court. My name is Sherry Wong and I'm an Assistant Attorney General here on behalf of the people of the State of Illinois. Your Honors, this Court should affirm the judgment of the appellate court for the following two and allowing the defendant's juvenile adjudication to come in to impeach his testimony on direct examination. Under Section 5-151C of the Juvenile Court Act, a defendant's juvenile adjudication can come in to impeach his credibility. Because the defendant's juvenile adjudication here satisfies this Court's requirements set forth in Montgomery for admitting a criminal conviction, the trial court did not abuse its discretion in allowing the adjudication to come in at this trial. And second, even if this Court finds that juvenile adjudications are not generally admissible under Section 5-151C, it became admissible when the defendant opened the door to its admission through his testimony on direct examination. Now, turning to the first issue, I'd just like to briefly address the defendant's statutory argument. To read the statute as the defendant suggests, for this Court to read the pursuant to the rules of evidence for criminal trials language to refer back to Montgomery's prohibition against the admission of a juvenile adjudication to impeach a testifying defendant, that would, as Justice Thomas, you noted, would read out the specific inclusion by the General Assembly of the including the minor defendant if he or she testifies language. It is presumed that when the General Assembly amended Section 5-151C, the juvenile adjudications to impeach a testifying defendant, it was aware of prior versions of the Juvenile Court Act, which was read consistently with the Montgomery rule, and it was aware of prior judicial decisions, such as Massey, Snead, Kearns, Bunch, all of those cases which read Montgomery and the Juvenile Court Act as to prohibit the Ms. Wong, though, doesn't this Court have the constitutional authority to supervise the courts? And why should we find that the legislature isn't approaching on this power? We would absolutely agree that this Court has the supreme authority to regulate the administration of the court system. And this Court has held that to be the case with respect to administrative rules, inherent powers of the judiciary, this Court has supreme authority. But this Court has also held that the General Assembly shares concurrent authority with this Court with respect to rules of evidence. Then why should we abandon the interpretation of pursuant to the rules of evidence as a reference to Rule 609? Because to read that reference as to refer back to Montgomery's prohibition, that would be contrary to general rules of statutory interpretation, which is to give all meanings of the section of the statute meaning. The including the minor defendant if he or she testifies language did not exist in prior versions of the statute. And so when the General Assembly specifically included that reference to a testifying defendant in that section, it meant to change the state of the law. And the General Assembly, as my opposing counsel noted, was certainly aware of this Court's decision in Montgomery prohibiting the use of juvenile adjudications to impeach a testifying defendant. So to include this specific language, it must have meant that it wanted to abrogate the common law rule not allowing juvenile adjudications to come in. Can I take you back to this tension between the authority of the legislature and the authority of this Court to write rules of evidence? This specific statute seems to acknowledge that. The pursuant to language, the legislature seems to appreciate that tension there. If you could comment more on that, but also could you also comment on the language in the newly effective, and I understand that not effective at the time, but the newly effective rules of evidence that state where a statute conflicts with a rule of evidence or a Supreme Court decision adopting a rule of evidence, courts are to follow the rule or decision. What do you think that means? Well, to address that question, we would agree that Rule 101 appears to be in tension with this Court's prior decisions in Orange and that Rolfings-Meyer line of cases, which hold that the General Assembly has the authority to create new rules of evidence and to alter existing rules of evidence. There does appear to be some tension between Rule 101 and this Court's prior case law. But in this case, Rule 101 does not resolve the conflict in this case. The codification of the Illinois rules of evidence was not meant to change any of the existing rules of evidence. It was simply meant to, the committee was simply compiling rules of evidence from the common law, from cases, from statutes and putting them into one efficient, easy-to-use guide for the trial courts and the practitioners. But it was not meant to change any of the existing rules. And the committee specifically recognized with respect to this conflict, they saw that there was a conflict between the statute and the Montgomery rule, recognized it, and noted in its committee comments to Rule 609D that the codification of the Montgomery prohibition was not meant to resolve this conflict. So the codification of Rule 101, the codification of Rule 609D does not resolve this question at all. This Court can certainly look to the rules of evidence as to what the state of the law was before the codification, but it doesn't resolve this question. And then to answer your second question about the why include this pursuant to the rules of evidence for criminal trials language in the statute, the legislature left that in because it wanted the way that these adjudications would be committed was to function in the way that criminal convictions are admissible to impeach a testifying defendant. So in this case, when the defendant filed his motion in limine, the trial court was going to conduct the analysis that is conducted when a criminal conviction would be admissible to impeach a testifying defendant. That is, Montgomery's requirements with respect to time, the conviction can't be more than 10 years old, it has to be for a crime of dishonesty, the defendant has to be innocent of the crime, and it has to be incorporated into this analysis. So the General Assembly was not changing any of those rules. It was allowing for the Montgomery balancing test to be incorporated into the analysis for the admission of juvenile adjudications, but it did want juvenile adjudications, which had been previously categorically inadmissible as a matter of law, to be admissible subject to the trial court's discretion. And that's one of the reasons there is no separation of powers challenge or issue in this case, because there is limited encroachment into what could consider to be part of the running of a trial. This court has been concerned with its separation of powers precedent with judicial, excuse me, legislative encroachment onto the inherent powers of the judiciary. But there's no encroachment in this case because the ultimate decision maker as to how the juvenile adjudication is to come in, that is left to the discretion of the trial court. They're simply, juvenile adjudications are simply admissible only if the trial court in its discretion allows them to come in. And this is perfectly consistent with the policy changes that the General Assembly made to the Juvenile Court Act in 1999. This court has recognized in Taylor that although rehabilitation still remains a chief goal of the Act, there has been this shift to include concerns of punishing juveniles for their crimes and holding them accountable for their actions. And this is part of the General Assembly putting forth its policy determination that we're not as concerned with the collateral consequences of a juvenile adjudication as we were when Montgomery was decided over 30 years ago. So if this court were to find that it did not have, that the General Assembly did not have the authority to alter an existing rule of evidence, that would call into question a number of statutorily enacted rules of evidence which have never been challenged on separation of powers grounds, given this court's prior precedent in Orange and Rolfings-Meyer. And this court's decision in Orange is directly on point with the facts of this case. In Orange, this court recognized that in a prior case, People v. Collins, that a prior inconsistent statement could not be used as substantive evidence of guilt. It could only be admissible to impeach testimony. And then the General Assembly subsequently enacted Section 115-10.1 of the Code of Criminal Procedure and held that prior inconsistent statements could be used as substantive evidence. This court in Orange addressed the constitutionality of that section and held that it was, it did not violate the separation of powers and that even though this court had said prior to the enactment of that section that a contrary rule applied, that did not affect the General Assembly's authority to enact a contrary rule. And that's exactly the situation that we have here. It's a decision from this court in Montgomery. The General Assembly, consistent with its changes to the Juvenile Court Act, decided it wanted to create a contrary rule of evidence. And the fact that this court in Montgomery had said that that was not the applicable rule did not prevent the legislature from creating a different rule. Just turning briefly to the opening the door question, as Your Honors acknowledged, the test is whether the defendant's testimony could reasonably be construed as an attempt to mislead the jury. And here it is perfectly reasonable to interpret the defendant's testimony as a whole to imply to the jury that he had no experience with the criminal justice system. And that- You say that the defendant was reasonably attempting to mislead the jury when he already knew the prior adjudication would be admitted. He knew that. He knew that ahead of trial and then he testified on direct examination knowing that the adjudication was going to come in. But then he also went further and testified that he had never been in a situation like that before. And then he went on to say that he had never been in prison or nothing like that. And as we talked before, does that necessarily mean he was untruthful? Defendant's interpretation could be one reasonable interpretation, which is that he just he gave a false statement because he was afraid of police and that he had never been in prison or nothing like that. He's trying to tell the jury, I've never been, I'm not experienced with the criminal justice system as a whole. And that's not true because not only had he been subjected to custodial interrogation, but he had also been charged with burglary as a criminal offense. And then was also adjudicated delinquent for burglary and placed on probation. And indeed he was on probation at the time that he  So the jury could have been able to determine that he was not guilty of any of these three constant offenses. So one reasonable interpretation, which the jury could have, they could have construed the defendant's testimony in that way. And because they could have, it was reasonable to think that the defendant had opened the door to that alternative basis that is supported by the record, even if the trial court's reasoning was incorrect. So if this court were to find that the defendant opened the door, that would be an alternative basis to affirm the defendant's conviction, even if this court finds that Section 5-151C doesn't govern the admission of juvenile adjudications in these cases. And then just briefly, I'd like to touch on the ineffective assistance claim. The defense counsel here, he did state that we were going to be in the probative balancing test at the hearing on the motion in limine. But he also, when read in context, that can only mean that he was referring to the statute. Because the statute is the only thing, as defense counsel acknowledged, is the only thing that was out there that allowed for that adjudication to come in at all. Because Montgomery doesn't allow for that. So when defense counsel trial was saying that case law allowed for the admission of the juvenile adjudication, he was saying that the statute allowed for it, but it still had to satisfy Montgomery's balancing test. And in this case, it didn't satisfy that test. So counsel couldn't have rendered deficient performance because he was recognizing what was a reasonable interpretation of the law. Indeed, it was an open question. So defense counsel couldn't have made an unreasonable argument based on a reasonable interpretation of the plain language of the statute on what was then an open question. So defendant can't establish that counsel rendered deficient performance. This amendment was made in 1999. Is that right? Yes. And yet this is the first time we've seen this issue. This issue came up in this court's prior case law in Harris. But this court expressly reserved the question about whether or not which version of the statute Montgomery governs. And that was in 2008. But there is some question in the lower courts as to which statute or if Montgomery governs. And then finally, even if defendant could show that counsel rendered deficient performance, he can't demonstrate prejudice as a result of that deficient performance. For one reason, the defendant opened the door to the admission of his juvenile adjudication. So it was admissible under that separate basis. And in addition, he can't demonstrate that there is a reasonable probability that absent the admission of the juvenile adjudication that he would have been acquitted. And that's why he was not charged with offenses. Because there was a number of other ways in which the defendant's testimony was impeached. He gave numerous false statements to the police, and that impeached his credibility. And the defendant agrees that he was properly impeached with his prior custodial interrogation. So given the defendant's motive for being involved in this offense, given those false statements with which he was impeached, there is no reasonable probability that he would have been acquitted had the adjudications not been admitted. If Your Honors have no other questions, we would ask this Court to affirm the judgment  of Mr. Glazer. Your Honors, the State is, again, going to the pursuance of the rules of evidence and looking at some of the rules of Montgomery and saying, well, some of them apply. You know, the 10 years, that applies. The felonies, that apply. You simply can't pick and choose which parts of Montgomery apply. If Montgomery is valid, then all of the felonies are not admissible. You can't just pick and choose. To suggest that it's just simply our reading of what this pursuant to clause means, it's not just our own reading. The 4th District in the Kearns case back many years ago, and the 2nd District before this case in Massey, as well as the 4th District in Coleman and Bond, agreed that we can read that, we have to read that clause as meaning the same thing as the other, 5-150, for many years now. They haven't changed, they haven't taken that out. And that means, I think, that the Legislature wants to respect this Court's rulings. As far as the current LNI Rule of Evidence, again, as Your Honor pointed out, they weren't in effect technically at the time of this trial here. Although the LNI Rule of Evidence 609 is directly out of Montgomery, so this Court has adopted Montgomery in the rules, there is a notice in the Committee Comments about a conflict. I don't think conflicts have to always result in a war here. I think we can resolve them, and in this case, certainly can resolve them, by saying that the general rule is, juvenile adjudications do not come in, with some exceptions, none of which exist here. The State is trying to argue that, well, back in Montgomery, there were simpler times, and juveniles were viewed as just little kids, and we're going to cut them some slack. And now I realize they should be punished as much as adults. That may be the case as far as juveniles being punished for the offenses for which they are standing an adjudication charge. It doesn't necessarily mean that it applies to collateral consequences as well. As far as opening the door, Justice Burke, you asked me beforehand, the Defense Counsel did not try to ameliorate the damage by questioning Mr. Villa about this during direct examination. The evidence of the prior came out during the State's rebuttal case when the prosecutor read the judgment to the jury. So that's when it first came out. Mr. Glazer, clarify something for me. Justice Thomas asked you earlier, I think, whether you would be reading out of this amended statute that a juvenile adjudication would be admissible for purposes of impeachment following your interpretation. Under what circumstances would this statute be effective, then, if the pursuant to the rules of evidence means Montgomery trumps the statute? Well, for example, if the prior adjudication was admissible to show other crimes, for other crimes purposes, if the defendant had committed a similar crime back as a juvenile and was on trial for, let's say, for example, I don't want to use my client as an example, but let's assume there was something distinctive about his prior burglary that stood out and he used the same M.O. as an adult, then it could come in as an other crimes type situation. But that would be only for impeachment purposes? For impeachment purposes, yes. The State has reinterpreted – Wouldn't other crimes evidence come in for other reasons other than impeachment? Well, yes, it could, yes, but then it comes in. Right, but it says but only for impeachment purposes. Then the general rule – well, it would come in if the defendant opens the door. If the defendant says, I've never been in trouble before, that would open it up for impeachment, similar to Harris. The State has made up what defense counsel said. Defense counsel never mentioned the statute. Defense counsel – in fact, the State, in page 4 of their brief, quotes from page 134. The court asked defense counsel, is there any case law? That is their statute. Is there a case law that says you cannot use juvenile delinquency findings for impeachment? Defense counsel, no. In fact, I believe the case law specifically says – interrupting says you can, so we're in normal balancing. Defense counsel, yes. Nowhere does defense counsel mention 151C. I think the State's attorney, somewhere in the motion for new trial, mentions the statute. But defense counsel – defense counsel didn't know what Montgomery held. He's not going to know what the statute said. He never said that. So to say that defense counsel said case law, but he meant statutory law, is pure conjecture, pure fabrication. As far as prejudice, again, the use of this prior meant a lot to the State. Mr. Weber, the prosecutor, has experienced the prosecutor no less than four times during his arguments to the jury he brought out the fact that my client had a prior adjudication. If it didn't mean anything, he wouldn't have said it. But it meant something to him to get it out, and it meant something to the outcome of this case because without it, my client might have been found not guilty. For those reasons, Your Honor, we ask this Court grant my client a new trial. Thank you. Thank you, Mr. Glazer. Case number 110777, People v. Victor Villa, is taken under advisement as agenda number four.